**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re Application of FORENSIC NEWS LLC and SCOTT STEDMAN for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in a Foreign Proceeding. | Case No. _____ |

**DECLARATION OF PATRICK DORIS IN SUPPORT OF PETITIONERS' APPLICATION FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782**

I, Patrick Doris, pursuant to 28 U.S.C. § 1746, declare as follows:

## INTRODUCTION

1. I was admitted as a solicitor in England and Wales in 1999 and am currently a Partner at the law firm Gibson, Dunn & Crutcher UK LLP, based in London, England, in the United Kingdom. I practice in the fields of commercial litigation, public and administrative law, corporate investigations and compliance, including in relation to data privacy compliance. I act as counsel to Petitioners, who are defendants in proceedings (the "English Defamation Action") currently underway in the High Court of Justice, Queen's Bench Division (the "High Court").

2. I submit this Declaration in support of Petitioners' Application for an Order Pursuant to 28 U.S.C. § 1782 (the "Application") permitting them to issue a subpoena for the production of documents and deposition testimony from Mr. Richard Frankel.

3. Unless otherwise stated, all facts set forth in this Declaration are based upon my personal knowledge, information supplied to me by Petitioners, and my review of relevant documents, including the proposed subpoena. If called as a witness, I could and would testify competently regarding the information set forth herein.

1

## THE ENGLISH DEFAMATION ACTION

4. The first defendant in the English Defamation Action, Forensic News LLC ("Forensic News"), is a California limited liability company and independent news outlet. Forensic News owns a news website that publishes investigative reporting pieces in the public interest. Forensic News' mission, as explained on its website, is to: "*deliver original long-form investigative journalism that actually matters. Though focused on national security/political/legal matters, we will never turn a blind eye to reporting that could make an impact.*"

5. Forensic News' journalists are primarily American. Although Forensic News has a small number of subscribers in the United Kingdom, Forensic News' journalists report in America for a largely American audience and from an American perspective.

6. Forensic News has, to date, published at least 160 articles, all of which are available on its website. The articles cover a variety of topics, including investigations into businesses related to Donald Trump, cybersecurity and spyware, the use of Russian money in the U.S. political and financial systems, and the activities of private intelligence companies in U.S. elections and major business disputes.

7. The second to fifth defendants in the English Defamation Action are or were journalists who have published articles and/or podcasts on Forensic News' website. (The sixth defendant, Richard Silverstein, is a journalist not affiliated with Forensic News; references to "the defendants" below do not extend to Mr. Silverstein.) They are all U.S. citizens and reside in the United States.

8. On 14 July 2020, Mr. Walter Soriano initiated the English Defamation Action in relation to eight publications authored or produced by the defendants: six journalistic reports, one podcast, and a published transcript of that podcast. These are the only publications on Forensic News' website that make substantial reference to Mr. Soriano. The claims brought

by Mr. Soriano included: (i) breach of the UK General Data Protection Regulation (GDPR), (ii) malicious falsehood, (iii) libel, (iv) harassment, and (v) misuse of private information.

9. Because the defendants reside outside the United Kingdom, Mr. Soriano made an application for permission to serve the proceedings out of the jurisdiction. Mr. Soriano originally brought that application on an *ex parte* basis, but by order of the High Court later brought it on notice to the defendants so that they could have an opportunity to oppose it at the outset (rather than applying retroactively for permission to be set aside once served).

10. All of the defendants, represented by my firm and by specialist defamation law barrister, Jonathan Price, of Doughty Street Chambers, opposed Mr. Soriano's application on the basis that the High Court lacked the necessary jurisdiction to try the claims.

11. A hearing was held before the Honourable Mr. Justice Jay on 14 and 15 December 2020 to decide the issue of jurisdiction. In a judgment dated 15 January 2021, Mr. Justice Jay granted permission for Mr. Soriano to serve outside of the jurisdiction with respect to the libel claim and part of the privacy claim (only in relation to four photographs of Mr. Soriano that were published on Forensic News' website). The remaining claims fell away.

12. The defendants appealed, and Mr. Soriano cross-appealed on the GDPR and malicious falsehood claims. In a decision dated 21 December 2021, the Court of Appeal dismissed the defendants' appeal and granted Mr. Soriano's cross-appeal with respect to the GDPR claim. In other words, the Court of Appeal granted Mr. Soriano permission to serve the defendants in the United States with his claims for (i) libel, (ii) misuse of private information with respect to the four photographs, and (iii) violation of the GDPR. The defendants declined to pursue a further appeal.

13. On or around 10 and 11 January 22, Mr. Soriano served four of the defendants (including Petitioners) with a Re-Amended Claim Form and Particulars of Claim. Mr. Soriano purported to serve the fifth defendant on or around 11 January 2022 with the same documents,

but the fifth defendant challenged the jurisdiction of the court and argued that service was defective under the laws of Pennsylvania where Mr. Soriano attempted service.

14. On 23 February 2022, the fifth defendant voluntarily withdrew his application to challenge jurisdiction of the High Court for improper service, and Mr. Soriano agreed to an extension of time for all defendants to file their Defence. It was at this point, when all of the defendants had been properly served, that the merits proceedings before the High Court formally commenced.

15. The defendants filed their Defence on 16 March 2022. Mr. Soriano now has the option of filing a reply to the Defence. In the next few months, it is expected that the High Court will convene a case management conference at which it will issue an order setting out the procedural steps leading up to trial on the merits of Mr. Soriano's claims. The High Court's order will also likely formally commence the disclosure phase of the proceedings (akin to "discovery" in U.S. civil proceedings).

16. After the disclosure phase, the parties will prepare and file witness statements, the content of which may be informed by the evidence obtained and exchanged during the disclosure process. The parties will thereafter begin preparation for trial, including cross-examination of witnesses and skeleton arguments.

**PROCEDURAL AND EVIDENTIARY RULES IN ENGLAND AND WALES**

17. The rules of civil procedure applicable to the English Defamation Action require that all facts at issue in a case must be proved by evidence, except where presumptions apply, facts are formally admitted, or the facts qualify for judicial notice (*i.e.*, the facts are so well-established that they are accepted without admission or the need for evidence). To the extent evidence is not currently under Petitioners' control, Petitioners will have to use available disclosure mechanisms to procure evidence in support of their case.

18. The High Court controls documentary evidence in proceedings by making orders for disclosure.

19. At the case management conference referred to in Paragraph 15 above, the High Court can be expected to order the parties to engage in "*standard disclosure.*" Standard disclosure is the exercise of the parties' duty to disclose the documents on which they rely and any documents that adversely affect or support their or any other party's case. Standard disclosure includes documents that are or were in a party's control and requires that a party make a reasonable search for these documents. The duty is ongoing and continues until the proceedings are concluded.

20. Parties will generally be entitled to seek disclosure or to adduce any other evidence so long as it is relevant. Evidence is relevant if it is directed to any fact that a party must prove to succeed in their case and that is not admitted by the adverse party. In *Director of Public Prosecutions v Kilbourne* [1973] AC 729 at 756, Lord Simons defined "*relevant*" evidence as that which is "*logically probative or disprobative of some matter which requires proof*" and *"makes the matter which requires proof more or less probable.*" To be relevant, evidence does not have to conclusively prove or disprove a fact at issue: it need only assist in proving or disproving, or tend to prove or disprove, a fact at issue.

21. In deciding whether to admit evidence at trial, the High Court will further follow the guidance in *Great Future International Ltd and others v Sealand Housing Corporation and others* [2002] EWCA Civ 1183. First, it will decide whether the evidence is relevant and not subject to an exclusionary rule of evidence.[1] Second, it will determine whether there is any good reason to exclude the otherwise admissible evidence as a matter of discretion under the English Civil Procedural Rules (rule 32.1). There is no express limit on the Court's discretion

---

[1] Examples of exclusionary rules include those which render inadmissible: opinion evidence (unless it is expert opinion evidence per Section 3 of the Civil Evidence Act 1972); privileged evidence; and evidence to which Public Interest Immunity applies.

5

to exclude evidence, but "*it has to be exercised in support of, and subject to, the overriding objective of enabling the Court to deal with cases justly*" (*Grobbelaar v News Group Newspaper Limited*, CA, 9 July 1999).

22. Although the High Court can order disclosure from entities and individuals in England and Wales, it cannot directly compel disclosure from entities or individuals who are outside the scope of its jurisdiction. I understand that the individual from whom Petitioners seek discovery, Mr. Frankel, resides in the United States. Because of this fact, and that Mr. Frankel is not a party to the English Defamation Action, the High Court will not have the jurisdiction or direct ability to compel production of his testimony or documentary evidence under his control.

23. At trial, Petitioners may have an opportunity to cross-examine any witnesses who testify in support of Mr. Soriano's case—including Mr. Soriano himself. Petitioners may confront a witness with documentary evidence during cross-examination to challenge that witness's credibility.

**THE EVIDENCE SOUGHT IS EXPECTED TO BE RELEVANT TO THE HIGH COURT'S DETERMINATION OF THE CLAIMS**

24. Petitioners are requesting discovery in New York that will enable them to defend against Mr. Soriano's claims in the English Defamation Action. Petitioners seek evidence related to specific statements made in their reporting and challenged by Mr. Soriano, including statements about work performed by Mr. Soriano and his security firm USG Security Limited. The documentary and testimonial evidence sought from Richard Frankel is expected to be highly relevant to Petitioners' ability to defend both Mr. Soriano's libel and GDPR claims.

25. *First*, with respect to the libel claim, Mr. Soriano alleges that 33 statements contained in the publications are defamatory. In England and Wales, it is an absolute defence

to a defamation claim to show that a defamatory statement is true.[2] The rationale for this defence is that a claimant should not be entitled to recover damages for injury to a reputation he did not deserve in the first place. In English defamation proceedings, a party asserting a defence of truth bears the burden of proof as to the truth of the statement.

26. *Second*, the evidence is expected to be relevant to Petitioners' defence of the GDPR claim. Mr. Soriano alleges that certain statements contained in Forensic News' publications breach the GDPR provision requiring accuracy. Article 5(1)(d) of the UK GDPR states that: "*Personal data shall be: . . . (d) accurate and, where necessary, kept up to date; every reasonable step must be taken to ensure that personal data that are inaccurate, having regard to the purposes for which they are processed, are erased or rectified without delay ('accuracy').*" Although the UK GDPR does not define the word "*accurate*," its predecessor legislation, the Data Protection Act 2018, states that "*inaccurate*" means "*incorrect or misleading as to any matter of fact.*"

27. *Third*, the evidence will relate directly to Mr. Soriano's credibility. In both court filings and statements to Petitioners, Mr. Soriano has flatly denied the truth of statements made in Petitioners' reporting. Petitioners believe Mr. Soriano is likely to testify at the upcoming trial in the English Defamation Action and may seek to deny the truth of Petitioners' statements. The evidence that Petitioners seek from Mr. Frankel will allow them to undermine Mr. Soriano's denials and to challenge Mr. Soriano's credibility as a witness during trial and cross-examination.

28. Petitioners and I believe that Mr. Frankel may possess documents, information, and knowledge corroborating the truth and/or accuracy of the publications at issue— particularly those that describe Mr. Soriano's security firm, USG, and his connection to certain

---

[2] *See* Section 2 of the English Defamation Act 2013. Section 2(1) provides that "*it is a defence to an action for defamation for the defendant to show that the imputation conveyed by the statement complained of is substantially true.*"

Russian oligarchs and Israeli political figures. Petitioners and I further believe that Mr. Frankel may also have information that will permit Petitioners to challenge Mr. Soriano's credibility during trial. Petitioners therefore require both documentary and deposition evidence from Mr. Frankel.

### THE HIGH COURT WILL LIKELY CONSIDER EVIDENCE OBTAINED PURSUANT TO SECTION 1782

29. As described above, Petitioners will be permitted to submit evidence in the English Defamation Action.

30. The High Court is amenable to accepting evidence procured through U.S. discovery mechanisms, including Section 1782.

31. To my knowledge, there are no laws or policies that would prevent the High Court from admitting and giving due weight to evidence obtained through Section 1782, and a request for discovery would not circumvent any English proof-gathering restrictions under the circumstances of this case. In *South Carolina Insurance Co. v Assurantie Maatschappij de Zeven Provincien N.V. [1987] AC 24*, the Judicial Committee of the House of Lords (then the highest appellate court in England) considered the issue directly, and held that a party to an English proceeding can make use of the Section 1782 discovery mechanism to obtain evidence for use in the English courts, and that it would be otherwise only if recourse to such mechanism was under the circumstances an abuse of the English Court's process or otherwise unconscionable. I am not aware of any fact that would take the present Application outside the general rule, or cause it to be regarded by the English Court as abusive or unconscionable.

32. Based on the current facts as I understand them, the discovery sought here would not be barred by any privilege under English law.

33. Therefore, I have no basis to believe the High Court would reject any evidence—let alone all the evidence—requested by Petitioners under Section 1782.

34. The evidence sought in this Application relates to Petitioners' ability to defend against Mr. Soriano's claims. While Petitioners intend to corroborate their truth defence in part by reference to confidential sources, these efforts will necessarily be limited by Petitioners' journalistic responsibility to protect those sources. Although Petitioners may obtain certain evidence from Mr. Soriano in the English Defamation Proceeding, evidence is sought by the Section 1782 process to assist them in contesting Mr. Soriano's credibility (particularly if Mr. Soriano testifies on his own behalf during trial).

35. In sum, Petitioners seek evidence through the Section 1782 process in order to assist them in the English Defamation Action, in particular to assist them in (i) establishing a legal defence to Mr. Soriano's libel claims; (ii) refuting Mr. Soriano's expected arguments on the accuracy element of his GDPR claims; and (iii) contesting Mr. Soriano's credibility at trial. Petitioners anticipate using this evidence to prepare witness statements and arguments for trial.

\* \* \*

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: March 31, 2022

Location: London, England, United Kingdom

_____
Patrick Doris